BRIAN ROGERS
160 J Street, Unit 2754
Fremont, CA. 94536
Telephone: (510) 894-2754
EMAIL: brog702@gmail.com

FILED
JUN 02 2023
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES FEDERAL COURT

FOR THE DISTRICT OF NORTHERN CALIFORNIA

BRIAN F. ROGERS, Plaintiff,

v.

LOW INCOME INVESTMENT FUND, AARON BASKIN, PAUL WETTERHOLM, ADINA ZBRINGER, JOHANNA VASQUEZ, SABRINA BAPTISTE, DANIEL A. NISSENBAUM, et al.,

Defendant (s)

Case No.: C23-02756 DMR

**CIVIL RIGHTS**

**Jury Trial Demanded**

## COMPLAINT

Comes Now, Plaintiff, Brian Rogers, and files his Complaint against the above-named Defendants on the following grounds:

## INTRODUCTION

1.This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for employment discrimination. Jurisdiction is conferred on this Court by 42 U.S. C. Section 2000e-5, as amended by the Civil Rights Act of 1991. Equitable and other relief is

sought under 42 U.S.C. Section 2000e-5(g) and under all laws governing the State of California.

Plaintiff BRIAN ROGERS complains and alleges as follows:

## II. THE PARTIES

2. Plaintiff BRIAN F. ROGERS is currently a residence of Alameda County, California.

3. Defendant LOW INCOME INVESTMENT FUND of San Francisco, herein referred as " LIIF", is a NON-PROFIT organization apparently organized to help low income people obtain loans for homes. LIIF conducts business at 49 Stevenson Street, Suite 300, San Francisco, CA. 94108.

Defendant AARON BASKIN is the Accounting Manager of LIIF Fund. Mr. Baskin's primary duties include maintaining financial controls and reporting LIIF's finances.

Defendant PAUL WETTERHOLM is the Director, Assistant Controller whose primary duties included financial matters related to the accounting department.

Defendant ADINA ZBRINGER duties include human resource analyst and oversees human resource functions.

Defendant JOHANNA VASQUEZ is the Senior Accountant responsible for accounting functions.

Defendant SABRINA BAPTISTE is the executive vice-president and Chief Administrative Officer.

Defendant DANIEL A. NISSENBAUM is the Chief Executive Officer of LIIF and directs the policy and strategy of LIIF.

4. Mr. Rogers is informed and believes, and based upon such information and belief, alleges that at all times material herein, each of Defendants was an agent or employee of one or more of the named Defendants, and was acting within the course and scope of said agency or employment. Mr. Rogers is further informed and believes, and based there on alleges, that each named or un-named Defendants is legally responsible for all occurrences herein alleged. All allegations in this complaint that refer to the named Defendants refer in like manner to those Defendants identified as Defendants.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 28 U.S.C. § 1367, 28 U.S.C. § 1343, 42 U.S.C. § 1983, and 1345.

6. This Court has original jurisdiction over Plaintiff's constitutional and federal law claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a).

7. This action arises under the Fourteenth Amendments to the U.S. Constitution of the United States; 42 U.S.C. § 1983; 42 U.S.C. § 1985; 42 U.S.C. § 1986; and 42 U.S.C. § 1988 (b).

8. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because they are part of the same case and controversy described by

Plaintiff's federal claims, and independent original jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332 because this action in controversy exceeds the sum of $75,000, exclusive of interests and costs.

9. Venue is proper in the District of Northern California, pursuant to 28 U.S.C. § 1391(b). The Defendants are located in California, and all events, actions, or omissions giving rise to these claims occurred in California.

## II. BACKGROUND

10. This complaint involves a failure and refusal of LIIF to hire or employ Black men for White-collar, professional, or managerial positions in favor of other racial groups (predominantly white men ) who are often and overwhelmingly less qualified for open positions. In this immediate complaint, Plaintiff, who is Black or African American male, applied for a Staff Accountant – Contracts and Billing position at LIIF on or around August 27, 2022.

11. On September 21, 2022, Adina Zbringer notified Mr. Rogers through an electronic mail that the Accounting Manager at LIIF named Aaron Baskin wanted to interview Mr. Rogers through a Zoom interview for the Staff Accountant-Contracts and Billing position. Mr. Rogers asked Adina Zbringer would it be possible to have an in-person interview. She said the only interviewing is through a computer at this time.

12. On September 27, 2022, Mr. Rogers interviewed with Aaron Baskin, the so-called Accounting Manager at LIIF. Mr. Baskin asked no pertinent questions pertaining to the position. Instead, Mr. Baskin gave a long narrative speech about LIIF. This was more of a

new employee orientation to the company rather than an interview. Mr. Baskin professed NO apparent skill in conducting an interview because he was ill-prepared and unqualified to conduct an interview. Mr. Baskin was hired as an Accounting Manager and NOT as a human resource professional. Therefore, he had no knowledge or training to intelligently conduct an interview.

13. On September 27, 2023, Adina Zbringer notified Mr. Rogers that the Accounting Manager wanted to conduct a second interview with Paul Wetterholm and Johanna Vasquez.

14. On October 3, 2022, Plaintiff Rogers interviewed by ZOOM conference with both Wetterholm and Vasquez. Neither asked any pertinent questions pertaining to the position. Instead, the second interview was conducted like a job orientation about the company, its values, etc. .This is similar to the format the first interview was conducted.

15. LIIF never bothered to contact Plaintiff Rogers after the second interview. LIIF essentially ignored Plaintiff Rogers until Plaintiff Rogers initiated the contact with LIIF approximately 10 days later. At this time, Mr. Baskin and Sabrina Baptiste began giving a number of false reasons for denying Plaintiff Rogers employment. This included no experience, lack of experience, and "other things". This was shown on an e-mail by Sabrina Baptiste.

16. Mr. Rogers was highly qualified for the Staff Accountant – Contracts and Billing position at LIIF. Mr. Rogers met all the pre-requisite qualifications, as stated by LIIF, for employment in terms of experience, education, and skills for the position. Mr. Rogers has

over 30 years of experience in accounting and finance positions. Mr. Rogers, who professes a B.S. degree in Business Administration with a concentration in Finance and a minor in Economics. Furthermore, Mr. Rogers has various levels of experience in all aspects of the business field including sales, marketing , logistics, operations as well. In fact, Mr. Rogers actually superceded many of the qualifications for the position. However, LIIF diverted and pivoted from its job requirements or from the job description by hiring a person who was far less qualified or even unqualified. The person hired did not meet the qualifications based on the job description announcement and /or hired a person (not of Mr. Rogers ethnicity or race) who was substantially less qualified in terms of experience, education, and skills.

17. Upon information and belief, based on the actions of LIIF, this non-profit organization and their white racist staff members (particularly Aaron Baskin and Paul Wetterholm) has barred Blacks, particularly Black men, from employment consideration at LIIF despite the fact that they are highly qualified.

18. This discriminatory conduct by LIIF has created a situation where LIIF views Black men as inferior to a broader U.S. society simply because of their race. Such conduct by the LIIF is a microcosm of a broader racist U.S. society where blacks are treated unfairly which has resulted in a gross inequity.

19. As a reminder to LIIF, all Black people are <u>NOT</u> "dumb and stupid" as society perceives them to be. Furthermore, Black people are <u>NOT</u> inferior to any other race of people even though blacks are often treated as such.

20. Its construed or implied to be a white racist statement because such a statement would not have been said to a white person but yet said to a Black person to dehumanize and humiliate a Black person.

21. This case is a clear example when you have two white males interviewing a Black person. That Black person will be rejected every time even if the Black person is more qualified than his/her white counterpart.

22. American society is predominantly based on what race YOU are. This society does not based decisions on merit factors such education, skill, experience, know-how, intelligence, or any other material factor. Decisions in U.S. society are purely based on what race you are. What other basis in life would the selection be based on if the criteria was not race in this immediate case? There is None.

23. Everything in society is defined by what race you are. Where you live, what state you live in , what city you live, what neighborhood you live in, who your friends are, where you work, who you work for, what occupation, where you go to school, what college you attend, how your treated in the criminal justice system, what sentence you receive in a criminal court, where you own property , who you marry, whether you own property, and how you are treated in a civil matter.

24. Why? Because racism is institutionalized. Racism has not gone away because it has never gone away. It's here to stay. American society was and still is built on racist ideas and ideology.

25. LIIF DOES NOT practice what they preach on their web site. Their message on the their web site is nothing but a cover up (or masquerading) in an attempt to hide their true white racist feelings. In their web site they state:

"LIIF's Anti-Racism Journey"

**" For decades, LIIF has worked predominantly in communities of color, yet we grapple with the fact that despite this, people of color continue to be most acutely impacted by deep, persistent inequities. LIIF has come to understand that these inequities persist because they are systemic and compounding. Traditional capital and financial markets which CDFIs and LIIF rely on have been rooted in White supremacy and, both intentionally and inadvertently, limited and continue to limit access to opportunity for communities and people of color."**

Though LIIF claims to have anti-racist values. This is not true. In fact, they project a racist ideology by failing to actually hire Blacks for positions when they are more qualified than their white or other non-Black applicants. This conduct is simply a "racial conspiracy" to deny Black men the opportunity to work in their organization. LIIF is simply masquerading a systemic problem in society which they are continuing to participate. Specifically, discriminating against Black people and Black men in particular. This is exactly why they have no representation of Black men at their headquarters. In particular, within their finance and accounting department.

## IV.GENERAL ALLEGATIONS

26.Mr. Baskin DOES NOT believe he or his company has engaged in any race-based discrimination towards Black applicants. However, his actions and the actions of the company he represents strongly suggest otherwise.

27. The fact is every time a Black applicant applies for a position within their accounting department or finance department that are rejected for employment at LIIF.

28.All persons making hiring decisions are all WHITE-MALE individuals which suggests a form of race-based discrimination.

29. Secondly, there are no Blacks on the "hiring board" of LIIF. All hiring decisions are 100% controlled by WHITE MEN or WHITE MALE who do not have the gumption of hiring anybody but another non-Black male to work at LIIF particularly in the accounting/finance department

30. Third, the WHITE MEN OR WHITE MALES hired at LIIF are disproportionately unqualified relative to the people of color or black' applicants or candidates that apply at LIIF.

31. Mr. Rogers was NOT ONLY highly qualified for the position that he applied for. But he actually has better credentials than the interviewer Mr. Baskin as the Accounting Manager.

32.The only reason that Mr. Rogers was NOT hired for the position is strictly because of his race only.

33. The reasoning of Mr. Baskin was ridiculous, insidious, obnoxious, and NOT factual.

34.Mr. Baskin was unprepared and unqualified to conduct interview of candidates. Mr. Baskin has no formal education, training, or and other type of credible experience which would suggest that he was qualified to conduct an interview.(of any candidate!).

35.Mr. Baskin believes that he is superior because he happens to be a white male. Mr. Baskin has this white male "superiority complex" as though he privileged in society to conducted himself in any manner he wishes simples because his skin is white.

36. LIIF gives one reason is "And other things". The reason "And other things " as stated on October 12, 2022 email by Sabrina Baptiste is NOT A legitimate reason under federal law. Instead, this is code word for " we did not hire you because you are Black." Mr. Rogers later discovered this was a special code word or phrase from LIIF as "we don't hire blacks in this department".

37. The only reason Mr. Baskin even obtained his position as a controller is strictly because his skin is white. Mr. Baskin is neither qualified or acceptable to be an Accounting Manager at LIIF or any other organization. He has extremely poor judgment, poor communication skills, and extremely poor interpersonal skills. However, he still obtained the position as an Accounting Manager at LIIF simply because his skin is white.

38. LIIF claims within its communication that it targets "people of color" for low cost loans for homes. However, this is not reflected within its workforce who are predominantly white male.

39. Mr. Baskin feels he should be given more favorable treatment in this immediate case as well as in life in general because his skin is white. As though he has some type of white privilege in life. In fact, that is the way its been for decades in America

40. Mr. Baskin is nothing more than a "scrub".

41. Mr. Baskin has preferential treatment for ONLY candidates that are white or who have white skin

42. The job announcement indicated the Staff Accountant- Contracts and Billing position annual salary was $78,000. This is a grant-funded position with a minimum period of two years of employment .

43. Mr. Baskin gave no reason for his decision not to hire Mr. Rogers and kept his reason confidential in the e-mail he sent to him on October 12, 2022.

44. LIIF has no diversity and inclusion policy or department within the human resource department. The reason for the policy at LIIF is because LIIF does not believe that racism and discrimination is still a part of American society when it's still a great deal part of society. In furtherance of such information and belief, LIIF bans the hiring of Black men from certain departments such as Accounting and Finance at their organization.

45. Mr. Rogers filed a complaint with the Equal Employment Opportunity Commission (EEOC) electronically on or around February 28, 2023.

46. Mr. Rogers filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC") who granted a telephone interview to Mr. Rogers on February 28, 2023.

47. LIIF engaged or engages in a pattern and practice of making hiring decisions based primarily on race. LIIF exhibited this racial preference by:

A. Hiring an individual or individuals who are of a primarily white workforce and avoiding Black males.

B. Failing to adhere or deviating from their own job descriptions by hiring non-Black male individuals who are less qualified than Mr. Rogers who do not meet the educational prerequisites, who have less experience, or less skills for the position.

C. Conjuring or inventing insidious excuses when they reject Black males applying or interviewing for a job and then rejecting those individuals for employment.

48. LIIF has a long-standing racial preference for hiring a predominately white workforce and avoiding hiring Blacks. Black men are disproportionately under-represented relative to their white counterparts at LIIF.

Plaintiff is a member of a protected class as defined by the Civil Rights laws as referenced herein.

49. Defendant discriminated against Plaintiff in regard to job application procedures, hiring, advancement, compensation, job training, and/or other terms, conditions, and privileges of employment based on his race.

50. As a result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer loss of past income and employee benefits, mental anguish, emotional distress,

embarrassment and other damages. Plaintiff is also entitled to attorney's fees (if any) and costs incurred in connection with this claim.

51. Defendants have engaged in illegal discrimination against the Plaintiff because of his race.

## FIRST CAUSE OF ACTION

**Intentional Discrimination**
**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*.)**

52. Mr .Rogers re-alleges and incorporates by reference each allegation contained in paragraphs 1 through 51, inclusive.

LIIF has a substandard and obscure hiring practice that is racially discriminatory. These substandard hiring practices are repulsive to racial minorities and black Americans in particular.

53. LIIF subjectively evaluates employment applicants of African Americans differently relative to Caucasian and other non-Black applicants. Defendant LIIF fails to rely on objective criteria and uses extreme generalities of evaluating Black male job applicants. LIIF bans minorities on employment decision-making bodies because they do not generally hire Blacks to work in their organization. LIIF did not hire Plaintiff because of his race and color. Apparently, Defendant LIIF attempted to cover up this reason by stating the Plaintiff was not qualified. The Staff Accountant position only required 3 years of experience.

54. In an e-mail sent by Sabrina Baptiste on October 12, 2023 she stated Mr. Rogers was "NOT QUALIFIED" even though he had over 30 years of experience. However, Mr.

Rogers was granted a second interview which would disprove this reason. If Mr .Rogers was NOT QUALIFIED, then he would not or should not have been given a second interview on October 3,2022.

55. Defendant LIIF's racial discriminatory policies have a significant adverse impact on African Americans. Defendant, LIIF bans Black men from white-collar and/or administrative positions at Defendant's place of business and intentionally discriminated against plaintiff. LIIF has a pattern and practice of refusing and denying Black men from employment opportunities at their place of business. In particular, employment for white-collar, administrative, or higher paying positions. LIIF's racial policies are designed to ban Black men from employment consideration. LIIF has a labor force predominantly Caucasian (i.e. white). It's even shown that LIIF refuses to hire Black men for employment opportunities even when they have greater, better or superior qualifications relative to their Non-African American counterparts.

56. Mr. Rogers possessed the requisite education, skills, and experience for a position at LIIF. LIIF selected candidates who were substantially less qualified relative to plaintiff. Plaintiff's skills, education, and experience exceeded the minimum requirements for the Staff Accountant position superceded the chosen candidates' based on skills, experience, and job-related education. LIIF uses only subjective criteria to evaluate Black candidates without any consideration for verifiable objective information to make decisions. Plaintiff has superior qualifications with respect to skills, experience, and education relative to the chosen candidate.

57. LIIF systematically and routinely avoids hiring Black males even when they are categorically more qualified than their non-black counterparts.

58. LIIF cannot articulate a legitimate or credible reason for denial of Mr. Rogers employment. Instead, LIIF invented a number of insidious reasons that form a subjective analysis and a basis for race discrimination. The foregone reasoning of the Defendant are subtle forms of discrimination because they lack a connection to performing the job and they are not relevant to the position based on skills, experience, and education which could be verified.

59. Defendants' discriminatory conduct, in violation of Title VII, has caused the Plaintiff to suffer a loss of pay, benefits, and prestige.

## SECOND CAUSE OF ACTION

**(Discrimination in Violation Of Cal. Gov't Code § 12940(a))**

60.0Plaintiff hereby incorporates by reference Paragraphs 1 through 59 of this Complaint as if fully set forth herein and for a cause of action alleges as follows:

45. At all times herein mentioned, California's Fair Employment and Housing Act ("FEHA"), Cal. Government Code § 12940 *et seq*., was in full force and effect and fully binding upon Defendants. Plaintiff was a member of a group protected by the statute, in particular section 12940(a), prohibiting discrimination in employment based on sex.

61. The denial of Plaintiff's employment by Defendants constitutes discrimination based on sex and violated Government Code § 12940(a).

62. As a direct, foreseeable and proximate result of Defendants' unlawful actions,

Plaintiff has suffered and continues to suffer substantial losses in earnings, equity and other employment benefits and has incurred other economic losses.

63. As a further direct, foreseeable and proximate result of Defendants' unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, and embarrassment all to the Plaintiff's damage in an amount to be proven at time of trial.

64. Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights or safety of Plaintiff and others.

65. Plaintiff is thus entitled to recover monetary damages from Defendants in an amount according to proof.

**THIRD CAUSE OF ACTION**
**(Intentional Infliction of Emotional Distress)**

Plaintiff hereby incorporates by reference Paragraphs 1 through 65 of this Complaint as if fully set forth herein and for a cause of action alleges as follows:

66. The conduct of Defendants' senior executives as set forth above was so extreme and outrageous that it exceeded the boundaries of human decency and was beyond pale of conduct tolerated in a civilized society. This conduct was intended to cause severe emotional distress, or was done in reckless disregard of the probability of causing severe emotional distress.

67. As an actual and proximate result of Defendants' wrongful conduct, Plaintiff has

suffered and continues to suffer severe and continuous humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in an amount according to proof at the time of trial.

68. Defendant's committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice and in conscious disregard of Plaintiff's rights. Because the acts taken toward Plaintiff were carried out by Defendants acting in a deliberate, cold, callous, and intentional manner in order to injure and damage Plaintiff, she is entitled to recover punitive damages from Defendants in an amount according to proof.

**FOURTH CAUSE OF ACTION**
**( Race/National Origin Discrimination in Violation of the California Fair Employment and Housing Act)**

As a fourth, separate and distinct cause of action, plaintiff complains against defendants LIIF, and other Defendants, and each of them, and for a cause of action alleges:

69. Plaintiff hereby incorporates by reference Paragraphs 1 through 55, inclusive, as though set forth here in full.

70. Defendants LIIF are employers in the State of California, as defined in the California Fair Employment and Housing Act ("FEHA").

71. Defendants LIIF discriminated against plaintiff on the basis of her race/national origin, Black, and denied plaintiff employment because of his race, in violation of the California Fair Employment and Housing Act.

72. The discrimination included, but was not limited to, plaintiff having her professional standing belittled or ignored after confirmation that he would not be hired. Defendants engaged in a pattern and practice of discrimination. The policies of defendants which were neutral on their face resulted in a disparate treatment on the class of Blacks .

**INJUNCTIVE RELIEF**

73. Plaintiff has suffered irreparable injury and immediate harm due to defendants' acts. Plaintiff has no other legal remedy. In addition to the other relief requested in this Complaint, plaintiff seeks injunctive relief to insure that defendants do not discriminate against, harass, and/or retaliate against other employees because of their sex, race/national origin, or complaining about discriminatory, harassing, and/ or retaliatory conduct.

II. Equal Employment Opportunity Commission.

74. Based on the information, each element together of Plaintiffs' action is a violation of the 1964 Civil Rights Act of 1964. Low Cost Investment Fund based their decision not to hire Plaintiff on subjective information that ultimately meant his race.

75. Plaintiff filed charges with the Federal Equal Employment Opportunity Commission , Charge No. **550-2023-01033**, regarding Defendant's alleged discriminatory conduct on or about April 4, 2023. Plaintiff thereafter requested and the Equal Employment

Opportunity Commission issued a Notice-of-Rights-to-Sue letter that was received by Plaintiff and dated on April 4, 2023. This lawsuit has been commenced within 90 days of receipt of the Notice–of-Rights-To-Sue. (A true and accurate copy of this Notice-of-Rights-to-Sue is attached hereto as Exhibit. A).

**PRAYER FOR RELIEF**

76. WHEREFORE, Plaintiff/Petitioner prays for relief as follows:

77. That the Court grant full front and back pay to the Plaintiff of a minimum of two years;

78. That the Court grant full front and back pay to the Plaintiff from October 3; 2022 based upon information and belief of a minimum of $279,000 which is compensation for two years with benefits.

79. That the Court grant Plaintiff compensatory damages for the humiliation, emotional distress, and other damages caused by Defendants' conduct;

80. That the Court grant Plaintiff punitive damages for Defendants' malicious and recklessly indifferent conduct;

81. That the Court grant Plaintiff all employment benefits he would have enjoyed had he not been discriminated against;

82. That the Court grant Plaintiff a jury trial;

83. That the Court grant Plaintiff all other relief the Court deems just and proper; and,

May 26, 2023

Brian Rogers

Brian F. Rogers

Plaintiff/ Petitioner

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Oakland Local Office
1301 Clay Street, Suite 680-N
Oakland, CA 94612
(510) 956-0004
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 04/06/2023

**To:** Mr. Brian Rogers
160 J Street, Unit 2754
FREMONT, CA 94536

Charge No: 550-2023-01033

EEOC Representative and email: ERIC DARIUS
Intake Supervisor
eric.darius@eeoc.gov

---

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 550-2023-01033.

On behalf of the Commission,

Digitally Signed By:Nancy Sienko
04/06/2023

Nancy Sienko
District Director