1  Theodora R. Lee, Bar No. 129892
   tlee@littler.com
2  Pamela Woodside, Bar No. 226212
   pwoodside@littler.com
3  LITTLER MENDELSON, P.C.
   Treat Towers
4  1255 Treat Boulevard
   Suite 600
5  Walnut Creek, California  94597
   Telephone:   925.932.2468
6  Fax No.:     925.946.9809

7  Attorneys for Defendants
   LOW INCOME INVESTMENT FUND, AARON
8  BASKIN, PAUL WETTERHOLM, ADINA ZBRIGER,
   AND JOANNA VASQUEZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| BRIAN F. ROGERS,<br><br>    Plaintiff,<br><br>    v.<br><br>LOW INCOME INVESTMENT FUND, AARON BASKIN, PAUL WETTERHOLM, ADINA ZBRINGER, JOHANNA VASQUEZ, SABRINA BAPTISTE, DANIEL A. NISSENBAUM, et al.,<br><br>    Defendants. | Case No. 3:23-cv-02756-WHA<br><br>**DEFENDANT LOW INCOME INVESTMENT FUND'S NOTICE OF MOTION AND MOTION FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    December 12, 2024<br>Time:   8:00 a.m.<br>Judge:  William A. Alsup<br>Dept:   12, 19th Floor<br><br>Trial Date: January 6, 2025<br>Complaint Filed:   June 2, 2023<br>Amended Complaint Filed: April 30, 2024 |
|---|---|

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

LIIF'S NOTICE OF MOTION AND MOTION FOR SANCTIONS   1   CASE NO. 3:23-CV-02756-WHA

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on December 12, 2024 at 8:00 a.m. in Courtroom 12 on the 19th floor of the above-captioned court, located at the Phillip Burton Federal Building and United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94103, or as soon thereafter as the matter may be heard, Defendant Low Income Investment Fund ("LIIF") will and hereby does move the Court for sanctions against Plaintiff Brian Rogers for his harassing and bad faith litigation/settlement conduct in attempting to extort Defendant LIIF to pay him a settlement in clear contravention of Fed. R. Civ. Proc. § 68 and this Court's Order dated September 6, 2024 (ECF No. 61.)

This Motion is brought pursuant to 28 U.S.C. § 1927 and the Court's inherent authority, and is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed Declarations of Walter Chen and Pamela E. Woodside, the pleadings and papers on file, including any additional information and argument that may be presented to the Court before or during any hearing that the Court may hold on this motion.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should issue terminating sanctions against Plaintiff due to his harassing and bad faith litigation/settlement conduct towards LIIF.

2. Whether the Court should award monetary sanctions against Plaintiff due to his bad faith litigation/settlement conduct pursuant to 28 U.S.C. § 1927 and its inherent authority.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Despite admitting that no one at Low Income Investment Fund ("LIIF") engaged in any overt acts of racism towards him and, therefore, the claims in his lawsuit arguably lack merit, Plaintiff has aggressively pursued an illegal scheme to force LIIF to pay him a settlement based on nothing more than its insurance policy. In November 2022, Plaintiff made threats during his communications with former LIIF Executive Vice-President and Chief Administrator Officer Sabrina Baptiste that he intended to contact LIIF's donors to relay his false narrative that LIIF engages in "white racist conduct." In July 2024, angered that LIIF insisted on pursuing its defenses, Plaintiff sent an email rife

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

LIIF'S NOTICE OF MOTION AND MOTION FOR SANCTIONS   2   CASE NO. 3:23-CV-02756-WHA

1  with falsehoods and misrepresentations to one of LIIF's donors. Despite being informed by defense
2  counsel that his conduct was illegal and could provide a basis for LIIF to bring serious legal claims
3  against him, Plaintiff continued his abusive settlement tactics to force LIIF to pay him settlement
4  proceeds.

5  Indeed, in September 2024, Plaintiff continued his campaign of harassment by sending defense
6  counsel and LIIF a series of threatening emails demanding LIIF respond to his settlement letter if it
7  wanted to avoid Plaintiff contacting LIIF's donors, the media and even LIIF's insurance company to
8  further spread his baseless claims that LIIF engages in race discrimination in its San Francisco office.
9  Plaintiff made clear that unless LIIF acquiesced to his unreasonable settlement demands, "[t]hings will
10 escalate. I promise."

11 Plaintiff's bad faith settlement conduct should not be countenanced by this Court.  The Court
12 should exercise its inherent authority to sanction Plaintiff for his harassing, bad faith litigation and/or
13 settlement conduct. Plaintiff's "settlement demands," clearly constitute extortion. Plaintiff's conduct
14 is even more egregious given this Court advised Plaintiff in September 2024 that defendants were free
15 to "press their defenses to the finish" if they desired to do so.  Plaintiff's clear efforts to circumvent
16 this Court's order should be addressed and Plaintiff should be sanctioned for his harassment of LIIF.

17 **II.    RELEVANT FACTS**

18 On or about July 23, 2024, Plaintiff emailed Anne E. Casey Foundation ("AECF"), one of
19 LIIF's donors, to demand that AECF: (i) suspend all financial donations to LIIF and (ii) request LIIF
20 return all donations to its organization due to Plaintiff's contention that LIIF had refused to hire
21 African Americans in its Finance and Operations Department *on numerous occasions* and was
22 apparently engaged in many different types of race discrimination practices, primarily in its San
23 Francisco office location. (Declaration of Pamela Woodside ("Woodside Decl.") ¶ 1 – Plaintiff's
24 Depo. Exhibit 18.)  During his deposition, Plaintiff acknowledged that he drafted Exhibit 18.
25 (Plaintiff's Depo. Transcript ("Plaintiff Depo. Tr") at 120:1-13.) Although Plaintiff stated that LIIF
26 refused to hire African Americans in its San Francisco office for 10 years, he had no idea how many
27 African Americans had applied to work for the organization and how many African Americans LIIF
28 had rejected for employment. (Plaintiff Depo. Tr. at 121:5 – 123:11.)  He also admitted that, despite

1  claiming LIIF refused to hire African Americans "on many occasions", he had no idea on how many
2  occasions LIIF allegedly refused to hire African Americans. (Plaintiff Depo. Tr. at 125:1 – 25.)  AECF
3  reached out to LIIF to obtain further details regarding Plaintiff's inflammatory and misleading email.

4  On August 2, 2024, defense counsel sent Plaintiff a cease-and-desist letter advising him that
5  his conduct was illegal and constituted intentional and/or negligent interference with LIIF's
6  contractual relations as well as intentional or negligent interference with LIIF's prospective economic
7  advantage.  Plaintiff was admonished that if he continued engaging in his wrongful activity, LIIF
8  would explore all legal remedies against him. (Woodside Decl., ¶ 2, Exh. 2.)

9  On August 4, 2024, Plaintiff sent an email to defense counsel and LIIF's in-house counsel with
10 a letter entitled "First Settlement Demand."  Plaintiff informed counsel that the settlement letter would
11 be submitted to the Court "as an indication that an attempt was made to resolve this matter."
12 Astonishingly, despite receipt of the cease-and-desist letter, Plaintiff threatened, "also, your donors
13 may continue to be contacted regarding this matter" which puts your organization "at risk" as a going
14 concern. (Woodside Decl., ¶ 4, Exh. 3.)  The implication was clear – either LIIF pay Plaintiff for his
15 non-meritorious claims or Plaintiff would continue to try to damage the organization by further
16 spreading false and misleading information.

17 Defense counsel reminded Plaintiff that he had already received a cease-and-desist letter
18 regarding his inappropriate conduct which set forth the consequences of Plaintiff continuing to attempt
19 to interfere with LIIF's existing contractual relations as well as their prospective economic advantage.
20 Plaintiff was cautioned not to continue engaging in his inappropriate conduct towards LIIF's donors
21 and vendors. (Woodside Decl. ¶ 5, Exh. 4.)

22 On September 6, 2024, Plaintiff filed his settlement letter with the Court in an effort to obtain
23 the Court's assistance in forcing Defendant LIIF to engage in further settlement discussions with him.
24 (ECF No. 60.)  After reviewing Plaintiff's filing, the Court issued an Order which stated, in part, that
25 pursuant to the federal rules, Plaintiff was entitled to bring his claims and defendants were entitled to
26 press their defenses to the finish if they wished to do so. (ECF No. 61.)

27 On this same date, Plaintiff again reached out to defense counsel to demand they respond to
28 his settlement letter. Although Plaintiff stated he would suspend further activity to LIIF's donors, he

1  made it clear that he would not rule it out in the future *depending on how LIIF and counsel responded*
2  *to his settlement demand.* (Woodside Decl., ¶ 8, Exh. 5.)

3  Thereafter, angered that LIIF had not responded to his settlement letter, on September 25,
4  2024, Plaintiff returned to his explicit extortionate threats. Plaintiff menaced defense counsel that if
5  LIIF failed to respond to his settlement letter, he would resume contacting LIIF's donors and
6  supporters in an effort to "financially jeopardize" the organization.  Plaintiff stated that he intended
7  to: (i) send LIIF's donors a copy of his complaint filed in this action; and (ii) notify press release
8  agencies about his baseless claims against LIIF. Plaintiff concluded his alleged "settlement" email by
9  stating, "things will escalate. I promise."

## III.   LEGAL ARGUMENT

A Court may impose sanctions pursuant to 28 U.S.C. § 1927 and its own inherent authority. Pursuant to 28 U.S.C. § 1927, any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. *28 U.S.C. § 1927*.

Before imposing sanctions pursuant to section 1927, a court must make a finding of subjective bad faith. *Trulis v. Barton, 107 F.3d 685, 694 (9th Cir. 1995)*. "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Id*. quoting *New Alaska Dev. Corp. v. Guetschow,* 869 F.2d 1298, 1306 (9th Cir. 1989)). Section 1927 sanctions may also be imposed upon a *pro se* plaintiff. *See Wages v. IRS,* 915 F.2d 1230, 1235-36 (9th Cir. 1989*)*.

Moreover, Federal courts possess certain "inherent powers" not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. *Link v. Wabash R. Co.*, 370 U.S. 626, 630 - 631 (1962). That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991); *see also Fink v. Gomez*, 239 F.3d 989, 991(9th Cir. 2001) ("The court also has the inherent power to impose sanctions, including attorneys' fees, for willful disobedience of a court order or if the party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.") When

a court relies on its inherent power to impose monetary sanctions against a party, it must make a specific finding of either (1) bad faith or (2) conduct that is tantamount to bad faith. *See Am Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021). Conduct that is tantamount to bad faith includes recklessness when combined with an additional factor such as frivolousness, harassment or an improper purpose. *Fink,* 239 F.3d at 994. *see also Goodyear Tire & Rubber Co. v. Haeger,* 581 U.S. 101, 107 (2017) (noting that a court may order "a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side" pursuant to its inherent power).

Here, it is beyond question that Plaintiff has abused the legal process through his frivolous, bad faith litigation/settlement conduct. Plaintiff's threats to LIIF to compel them to pay him a settlement in lieu of pressing forward with their defenses constitutes attempted extortion. *See e.g. Flatley v. Mauro,* 39 Cal. 4th 299, 325 ("extortion has been characterized as a paradoxical crime in that it criminalizes the making of threats that, in and of themselves, may not be illegal. "In many blackmail cases the threat is to do something in itself perfectly legal, but that threat nevertheless becomes illegal when coupled with a demand for money." (citations omitted.)  Plaintiff repeatedly tied his demands for money from LIIF to threats to spread knowingly false information about the organization. In his September 6, 2024 email communication, Plaintiff made his point very clear, "I sent you a settlement letter and you need to respond to the letter accordingly… I will suspend any further contact of [LIIF's] donors *at this time.*  But *I won't rule it out depending on how you respond.*"  Angered at the lack of response, in September 2024, Plaintiff escalated his extortionate threats further  stating, "…A failure to respond will cause me to contact your donors and supporters *which could financially jeopardize your organization…*In furtherance, I may just notify certain press release agencies… and publicize your conduct and behavior through the press which can be picked up by national and local media… **Things will escalate. I promise.**"  It is beyond question that Plaintiff was relying on LIIF's fear of him spreading false information to carry on his campaign of harassing, oppressive and vexatious monetary demands. The Court should not endorse Plaintiff's bad faith conduct; it should use its inherent authority to sanction Plaintiff by: (1) terminating this lawsuit and (2) requiring him to pay the defense costs in having to respond to his illegal settlement demands and file this motion.

Additionally, Plaintiff has also violated, if not the letter, then the spirit of this Court's

1  September 6, 2024 Order which plainly advised Plaintiff that "…under the rules defendants are entitled
2  to press their defenses to the finish, if they wish, and to seek orders for relief they can show proper in
3  turn." (ECF No. 61 at page 3: lines 16 – 19.)  Plaintiff clearly sought to make an end run around this
4  Order by forcing the LIIF Defendants to pay him an inflated settlement in exchange for him dropping
5  for his non-meritorious claims. In none of Plaintiff's settlement communications did he contend that
6  he was entitled to be compensated because his claims had merit. Rather, Plaintiff's sole argument that
7  he was entitled to compensation to resolve his claims was grounded in his knowledge of the limits of
8  LIIF's insurance policy. Indeed, Plaintiff openly admitted to his Court that his "race discrimination
9  case" was not based on any overt acts of racism by LIIF but solely on his own subjective belief that
10 he was better qualified than the candidate for the Staff Accountant that was hired. As the LIIF
11 Defendants' motion for summary judgment, or in the alternative, partial summary judgment makes
12 clear, Plaintiff's subjective belief is without merit. Plaintiff's efforts to ignore this Court's Order
13 should be sanctioned. This Court should use its inherent authority to sanction Plaintiff for his abuse of
14 the judicial process.

## IV.   CONCLUSION

For all the foregoing reasons, LIIF respectfully requests that this Court issue terminating sanctions against Plaintiff and also award it sanctions in the amount of $5,830.00 which represents its counsels' costs in having to respond to Plaintiff's bad faith litigation tactics and filing of this motion.

Dated:  November 7, 2024

LITTLER MENDELSON, P.C.


/s/ *Pamela E. Woodside*
Theodora R. Lee
Pamela Woodside

Attorneys for Defendants
LOW INCOME INVESTMENT FUND,
AARON BASKIN, PAUL WETTERHOLM,
ADINA ZBRIGER, JOANNA VASQUEZ,

4855-1174-0402.1 / 119644-1002