UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRIAN F. ROGERS,

   Plaintiff,

  v.

LOW INCOME INVESTMENT FUND,
AARON BASKIN, PAUL
WETTERHOLM, ADINA ZBRINGER,
JOHANNA VAQUEZ, and SABRINA
BAPTISTE,

   Defendants.

No.  C 23-02756 WHA

**ORDER GRANTING SUMMARY
JUDGMENT AND GRANTING
SANCTIONS, IMPOSING LIEN ON
SETTLEMENTS AND JUDGMENTS**

**INTRODUCTION**

  In this employment-discrimination action, a non-profit community development

organization and its then-employees move for summary judgment against a job applicant's

claims that they did not hire him for a job monitoring grants in low-income communities

because he is black.  The head of human resources who communicated the denial and bore the

brunt of his accusations now also moves for summary judgment.  Both motions are **GRANTED.**

A motion for sanctions is **GRANTED.**

**STATEMENT**

  **1. THE ORGANIZATION'S HIRING PROCESS AND RESULT.**

  Defendant Low Income Investment Fund ("LIIF") is a non-profit community

development organization (*see* Dkt. No. 74 ("Rogers Exhs.") A ("Job Posting") at 2).[1]  It takes

---

[1]  Citations are to original page numbers where present; otherwise, they are to the ECF pagination.
This order also cites to exhibits submitted in support of the non-movant (Dkt. No. 74), which this

funds from private, public, and philanthropic sources and directs them to high-impact uses in low-income communities, then monitors the performance of what gets funded (*see ibid.*). It is headquartered in San Francisco with other offices in Los Angeles, New York, Atlanta, and Washington, D.C (*ibid.*)

In early 2022, LIIF posted a position titled "Staff Accounting – Contracts and Billing" (*see* Dkt. No. 70-3 ("Baskin Decl.") ¶¶ 2–3. The open position was to manage and monitor state grants that LIIF directed towards early childcare programs (*see ibid.*; Job Posting 3). The job responsibilities included grants accounting (Job Posting 3). A desired qualification was also grants accounting experience (*id.* at 4). Required qualifications included a bachelor's degree "with emphasis in Accounting," "three years' work experience preparing journal entries, reconciling accounts, [and] financial reporting," proficiency in accounting and spreadsheet software, and interpersonal skills like an "[a]bility to work cooperatively" (*id.* at 3–4; *see also* Baskin Decl. ¶ 3; Dkt. No. 73-1 ("Rogers Decl.") ¶¶ 3, 6, 15). The work location was "preferabl[y]" San Francisco (Job Posting 2). All of LIIF's offices were listed as possible locations (*ibid.*).

In August 2022, plaintiff Brian F. Rogers applied (Rogers Exh. L ("Rogers Application") at 22). As his application disclosed, Rogers at the time had:

- a bachelor's degree in finance, not accounting, from San Jose State University (Rogers Application 22);

- at least 25 years of experience in accounting roles (Rogers Exh. B ("Rogers Resume") (from 1997 to 2022); *cf.* Rogers Decl. ¶ 16 (over 30 years));

- two recent roles held for one month each (Rogers Application 22–25), plus a consulting role held during what was listed as his current role, Senior Accountant at City of Berkeley (*ibid.*), a role that in fact had ended two years before he applied (Rogers Dep. Tr. 37);

- experience in grants accounting with "grants" appearing in two of nine bullet points for City of Berkeley, again a role appearing to have lasted three years to time of application

---

order construes as authenticated by the non-movant's declaration (Dkt. No. 73-1). *Cf. Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Movant defendants likewise credited or did not challenge plaintiff's exhibits (*see, e.g.*, Dkt. No. 84 ¶ 2 (citing Exh. G)).

(Rogers Application 22–23) but in fact having lasted ten
months (Rogers Dep. Tr. 37);

- proficiency in accounting software such as Yardi (Rogers Application 25); and,

- proficiency stated in spreadsheet software like Excel (Rogers Resume 10).

Rogers, who is black, was invited to interview at LIIF.

On September 27, 2022, LIIF Accounting Manager Aaron Baskin, also a defendant, interviewed Rogers via the video-conferencing service Zoom (Rogers Decl. ¶ 4). All agree the interview was for screening purposes (*ibid.*; Baskin Decl. ¶ 5). All agree that nothing about the interview addressed race or upset Rogers at the time (Rogers Dep. Tr. 78–79). Rogers says that Baskin did not ask substantive questions, but rather talked about LIIF's work (Rogers Decl. ¶ 4). Not seeing any "red flags," Baskin decided to give Rogers a second interview with two people with whom he might work, one of them Baskin's supervisor (Baskin Decl. ¶ 5).

On October 3, 2022, LIIF Assistant Controller Paul Wetterholm, a white man (Rogers Exh. H), and Senior Accountant Joanna Vasquez, a Hispanic woman (*ibid.*), interviewed Rogers via Zoom (Rogers Decl. ¶ 11). Again, nothing about the interview addressed race or upset Rogers at the time (Rogers Dep. Tr. 84–85). The interview addressed at least two substantive areas:

All agree the interview addressed a feature of Rogers's recent work history that was "a little odd": The City of Berkeley role overlapped with a role at the company "Centium, Inc." (*see* Dkt. No. 70-4 ("Wetterholm Decl.") ¶ 4; Rogers Decl. ¶ 5). As it turns out, Rogers's role at City of Berkeley *already* had gone away: It had lasted ten months before Rogers was furloughed, more than two years before he applied and listed it as his current role (Rogers Dep. Tr. 37–38).

All also agree the interview addressed Rogers's Excel skills, which Rogers told Wetterholm and Vasquez were intermediate (Wetterholm Decl. ¶ 3; Rogers Decl. ¶ 7; *see* Rogers Dep. Tr. 83–84).

It is disputed whether grants accounting came up — specifically whether this interview

United States District Court
Northern District of California

3

for a position involving grants accounting addressed Rogers's only experience involving grants — at City of Berkeley (*compare ibid.* (yes it came up), *with* Rogers Decl. ¶ 11 (no)).

The contents of the written application and resume submitted are not disputed.

Following the interview, the interviewers met to discuss the applicant: Wetterholm and Vasquez told Baskin that Rogers was not a great fit given his string of short-duration jobs, his limited Excel skills, and his limited experience in grants accounting, particularly in the kinds of grants overseen by LIIF (Baskin Decl. ¶ 6; Wetterholm Decl. ¶ 5). Rogers contends LIIF instead rejected him because he is black.

On October 11, 2022, Rogers emailed Baskin for an update (Rogers Decl. ¶ 9; Baskin Decl. ¶ 7; Rogers Exh. K ("Emails") at 16). On October 12, Baskin responded with a form rejection (Baskin Decl. ¶ 8; Emails 16). This prompted an immediate reply from Rogers threatening legal action (Emails 17), as described further below. He added to the recipient list LIIF's chief administrative officer, Sabrina Baptiste, also a defendant, whose information Rogers had found online (Rogers Dep. Tr. 166–67). She replied:

> Brian,
>
> Thank you for your emails and follow-up. However, please note that while we appreciate your interest in feedback, your threats that LIIF "we will have a major problem" and "this is a not a game" are not appreciated. Further, if you feel that you were subject to discrimination, please provide more information as to the basis of this belief so LIIF can review. Based on our initial review, there is no basis for a discrimination claim; as you note, you were provided a second-round interview. LIIF has an equal employment opportunity policy and prohibits discrimination in any manner. Moreover, LIIF is proud of its diverse workforce and diversity, equity and inclusion efforts and programs.
>
> *You were not selected for the role based on the details shared regarding professional experience, work history and our interviews - including, but not limited to, grants accounting and billing experience needed for the role at LIIF.* Indeed, LIIF is continuing to review candidates for this role. Please be assured that LIIF has no intention of offering the position to someone who is not, or less, qualified.
>
> Take care,
> Sabrina

(Emails 18 (emphasis added)).

4

Because he was not hired, Rogers did not receive income and professional validation, and felt "agitated" and "angry" (Rogers Dep. Tr. at 151, 156–58, 163, 167–68).  He also felt distressed by Baptiste's failure to respond to his further emails (*id.* at 167–68), as described further below.  Rogers did not seek treatment for distress (*id.* at 157–58, 163).

In December 2022, LIIF filled the role by hiring Arishma Singh, a South Asian woman (Baskin Decl. ¶ 11; Wetterholm Decl. ¶ 6; Dkt. No. 76-1 at 17).  Singh at the time had:

- a bachelor's degree in accounting earned *cum laude* from the City University of New York, Queens College (Dkt. No. 70-1 Exh. 2 ("Singh Resume"));

- over three years of post-college experience in accounting and financial reporting, including "reconciliation of accounts," "[g]enerat[ing] monthly financial statements," and "submitting general ledger entries for grant revenue, expenses, and receivables" (*ibid.*);

- no role held for fewer than eighteen months, and no roles held at the same time as other roles (i.e., only when one role ended did another begin) (*ibid.*);

- the two most recent roles involving grants accounting, including her most recent role directly managing $25 million in federal, city, and state grants (*ibid.*; *see* Wetterholm Decl. ¶ 6);

- proficiency in accounting and financial software (*ibid.*); and,

- advanced proficiency in Excel, including pivot tables (*ibid.*).

LIIF contends that Singh was hired because of her more extensive experience and training in grants accounting and compliance, her advanced skills in Excel, and her "warm personality" (Baskin Decl. ¶ 11; *see* Wetterholm Decl. ¶ 6).  Rogers does not present any contrasting theory for why she was hired, except impliedly that — although she is not white (*see* Dkt. No. 76-1 at 17) — she was not black.

### 2. THE JOB APPLICANT'S THREATS AND LITIGATION CONDUCT.

This order finds these separate facts relevant to the procedure and sanctions motion, which it does not rely upon in the summary judgment motion:

#### A. THE JOB APPLICANT'S LITIGANT HISTORY.

Before Rogers threatened litigation in this action, Rogers already had brought the following employment discrimination actions in this district alone, with the following results:

- Job discrimination claims, dismissed in favor of bank: *Brian F. Rogers v. Bank of America Corp.*, No. 99-cv-05146-MJJ, Dkt. No. 65 (N.D. Cal. Apr. 13, 2001) (Judge Martin J. Jenkins);

- Job discrimination claims, dismissed in favor of consultancy: *Brian F. Rogers v. Robert Half Int'l Inc.,* No. 17-cv-03777-PJH, Dkt. No. 31 (N.D. Cal. July 18, 2019) (Judge Phyllis J. Hamilton);

- Job discrimination claims, summarily adjudged in favor of bank: *Brian F. Rogers v. Fed. Home Loan Bank of S.F.*, No. 19-cv-01978-SI, Dkt. No. 53 (N.D. Cal. May 26, 2020) (Judge Susan Illston), *appeal dismissed*, No. 20-16110 (9th Cir. Oct. 8, 2020).

He also had brought a litany of other actions in other federal and state jurisdictions. *See Fed. Home Loan Bank of S.F.*, No. 19-cv-01978-SI, Dkt. No. 29 (N.D. Cal. Nov. 25, 2019) (Judge Susan Illston) (chronicling filings through 2019).

And, in the same period involved in this suit, Rogers also applied to and brought suit against other employers. One action was filed twelve days after this one, and the other three months after. Those ongoing actions allege:

- Job application-related claims, asserted before a federal agency as an equal opportunity issue but later brought in state court as false advertising and fraud as to the job posting, *Brian Rogers v. City of Dublin*, No. 23CV035915, Dkt. No. 1 ¶ 28 (Cal. Super. Ct. Cnty. Alameda filed June 14, 2023); and,

- Job discrimination claims, the fifth such case in this district, *Brian F. Rogers v. City of San Francisco*, No. 23-cv-04997-JCS (N.D. Cal. filed September 28, 2023) (Judge Joseph C. Spero).

When early on in this case the Court inquired whether plaintiff should get a lawyer, it seemed that he had some experience. The judge asked how many cases he had litigated. Rogers was at least modest when he replied that he had brought "probably more than two" such cases before (*see* Dkt. No. 61 at 1).

### B. THE THREATS TO FILE AN EEOC CHARGE, TO BRING LITIGATION, AND TO CONTACT DONORS.

As noted above and elaborated here, Rogers threatened litigation when he was not hired by LIIF: On October 12, 2022, after Rogers received Baskin's rejection, he responded by threatening litigation while asking for another explanation:

United States District Court
Northern District of California

> Dear Aaron,
>
> I'm really not interested in these "boilerplate" responses from you. I want to know WHY I was NOT selected for the Staff Accountant position. This should be a objective , verifiable, and factual reason. I'm going to give you until the end of this Friday to give me such a reason. That was my TIME that you wasted.
>
> As I have stated, I am well-qualified and more than qualified for such a position. If somebody is offered this position that's less qualified than myself, you will have a major problem at hand. This is NOT a game. IF I DO NOT reason a valid answer by Friday, I will involve a third-party into this matter which could be a complaint filed with EEOC *which eventually will become a legal matter in U.S. Federal District Court for discrimination*
>
> Good Day,
>
> Brian

(Emails 17 (italics added)).[2]  To address this escalation, the chief administrative officer, Baptiste, whom Rogers had included on his email, replied to further explain why Rogers was not hired (*supra*).  Rogers did not respond for a month.

On November 15, 2022, Rogers emailed Baptiste once more, confirming he would file litigation and threatening LIIF's funding and Baptiste's job:  "Let's see whether you still have an organization (or a job) after revealing ['your white racist conduct'] to YOUR donors" (Emails 19).[3]  He wrote in full:

> Sabrina,
>
> Thank you for the response.
>
> I will be filing a race discrimination complaint with EEOC or the California Department of Fair Employment and Housing against LIIF.
>
> YOU have provided NO legitimate reason your failure to hire me for that position.  There's a strong basis for filing a race discrimination complaint based on my information.  I superceded the qualifications for the position which included experience, education, and skills for the position.  Your interviewer, Aaron Baskin, was ignorant, incompetent, and unqualified to even

---

[2]  This email and others throughout are reproduced here with their original typographical nits.
[3]  Rogers reported he had no knowledge of Baptiste's race at the time he wrote his email (*see* Dkt. No. 59 at 1; Rogers Dep. Tr. 105).  Defense lawyers have represented that Baptiste is black (*see ibid.*), but have never submitted proof to that effect (*see* Dkt. Nos. 83, 84; *see also* Dkt. No. 85). This order therefore does not rely upon that representation.

conduct an interview. All Aaron Baskin did at the interview was talk about LIIF. But that's typical of a white racist and white people in general.

I'm going to NOTIFY the City of San Francisco and City of Los Angeles about your white racist attitude and see if they will continue to support your organization. *I think YOUR donors should know about your white racist conduct as well. Let's see whether you still have an organization (or a job) after revealing this to YOUR donors.*

I will see you in U.S. Federal District Court next year.

Respectfully,

Brian

(Emails 19 (italics added)). Baptiste did not respond.

Rogers continued to badger Baptiste in follow-up emails. In one, he wrote: "The ONLY reason [Baskin] was even hired is because his skin is white. He's highly unqualified and ignorant. I have more qualifications for his position than he has. What do YOU think about that Sabrina ?????" (Rogers Dep. Exh. 19).[4] Baptiste did not respond.[5]

## C.    THE FILED EEOC CHARGE AND COURT COMPLAINT.

In February 2023, three months after his threat to do so, Rogers filed a charge of race-based discrimination against LIIF with the EEOC (Rogers Dep. Exhs. 20–21; Rogers Dep. Tr. 139–45). Recall that Rogers had told LIIF that his EEOC matter "eventually w[ould] become a legal matter in U.S. Federal District Court for discrimination" (Emails 17). Rogers filed a charge with the EEOC, which dual-filed the charge with the State of California's Department of Fair Housing and Employment (Rogers Dep. Exh. 21).

---

[4]   The cited deposition transcript and exhibits are in LIIF's exhibits (*see* Dkt. No. 70-1 at 2–3).
[5]   The above emails had two notable parallels with the other actions contemporaneous to this one: *First,* against City of Dublin, Rogers just a few months earlier had brought a charge at the United States Equal Employment Opportunity Commission. In his words, his "basis for filing [that] complaint with the EEOC was to force the City of Dublin to give a bona fide reason as to why Mr. Rogers was not selected for further consideration" for the role there. *City of Dublin*, No. 23CV035915, Dkt. No. 1 ¶ 28. After the parties mediated, he filed a lawsuit in federal court instead alleging false advertising in the job description. *See ibid. Second*, as to the City of San Francisco, even as Rogers in the email above from November 2022 said that he would report LIIF's misconduct to the City of San Francisco, he applied for a job at the City of San Francisco in December 2022 and soon brought discrimination charges against it, too. *See City of San Francisco*, No. 23-cv-04997-JCS, Dkt. No. 1 ¶ 14.

United States District Court
Northern District of California

In April 2023, Rogers signed his EEOC charging document (Rogers Dep. Exh. 20).  His written narrative for the charge was in total as follows:

> **What happened to you that you think was discriminatory? . . .**
>
> On October 12, 2022, I was denied employment even though I was most qualified because of my race.

(*id.* at 2).  And:

> **Adverse Action(s)**
>
> I applied for a position and the employer gave me several excuse which were NOT LEGITIMATE towards the employment of work. The employer was evasive and improperly used race in the hiring decision.

(*id.* at 4).  Rogers declined to provide any supplemental narrative responses to answer these prompts:  "[r]easons [you were] given for the action taken against you," "[whether] anyone [else] in a similar situation [was] treated the same, better, or worse than you," contact information for corroborators, and "any other information about your experience" (*id.* at 5).

On April 6, 2023, at Rogers's request, the EEOC dismissed his charge to give him an immediate right to sue in court (Rogers Dep. Exh. 21).  The state agency did the same (*ibid.*).

On June 2, 2023, Rogers filed this suit (Dkt. No. 1).  His complaint alleged that "Mr. Rogers [had] discovered" that statements made "by Sabrina Baptiste" were "a special code word or phrase from LIIF [that meant] 'we don't hire blacks in this department'" (*id.* ¶ 36). His initial complaint alleged that Rogers had "superior qualifications" in "education" than the chosen candidate, among other things (*id.* ¶ 56).  Rogers has a business degree with emphasis in finance, not accounting (Rogers Resume 9–10; Rogers Application 22), whereas the eventual hire earned an accounting degree *cum laude* (Singh Resume).

### D.    THE OPERATIVE, AMENDED COMPLAINT.

Rogers later amended his complaint (Dkt. No. 48).  He brought the following claims:

- Disparate treatment on the basis of *sex*, *national origin*, and *race* under the Section 12940(a) of the California Fair Employment and Housing Act (*id.* ¶¶ 65–71, 75–78);

- Disparate treatment on the basis of *race* under Title VII of the Civil Rights Act of 1964 (*id.* ¶¶ 52–59);

- Disparate impact on the basis of *race* under Title VII (*id.* ¶¶ 60–64); and,

- Intentional infliction of emotional distress (*id.* ¶¶ 72–74).

Rogers later said maintaining his sex-based discrimination claims was a "mistake" (Dep. Tr. 150). All defendants to the amended complaint have been served (*cf.* Dkt. Nos. 35– 36). Rogers sought two years' pay, or $279,000, and other relief (Amd. Compl. ¶¶ 79–80, 83–90).

The merits of these claims are below.

### E.    THE CONTACTED DONOR AND SETTLEMENT OFFERS.

In January 2024, the Court entered its scheduling order (Dkt. No. 42).

On July 22, 2024, LIIF's counsel emailed Rogers requesting "several dates in August when you are available to be deposed. Your deposition will last the entire day" (Dkt. No. 55-1 Exh. 25 at 341). Plaintiff did not respond (Dkt. No. 55-1 Decl. ¶ 29). Instead:

The next day, on July 23, 2024, Rogers emailed the Annie E. Casey Foundation, one of LIIF's donors. He identified himself as "Litigation Support," and emailed one of the Foundation's senior leaders and its "media@aecf.org" address:

> Dear Annie E. Casey Foundation,
>
> Dear SIR/MADAM:
>
> I am asking your organization to suspend all financial donations and activities to LOW INCOME INVESTMENT FUND ("LIIF") based in New York, NY[*sic*]. In addition, we are demanding you to request the return of donations as this organization has not and is not truthfully fulfilling its mission.
>
> Low Income Investment Fund is a 501(c) organization that claims to help all races and genders, and disadvantaged people throughout the United States. However, this is far from the truth. LIIF is currently engaged in a race discrimination case in the San Francisco bay area as the company *has refused to hire African Americans in its Finance and Operations Department on numerous occasions*. This case matter is currently being litigated in U.S. District Court – Northern District (Case# 3:23-CV-02756-WHA) against LIIF. The reason they have not disclosed this information to you is because they do not want their donors to discover this information. The Department of Treasury is currently investigating LIIF for these same racial discrimination practices since they are using taxpayer funds to operate their organization.
>
> The LIIF organization has made claims that it does not

10

discriminate. However, *the evidence shows the company is engaged in many different race discrimination practices which are primarily in its San Francisco office location*.

We are demanding that you suspend or decline your donor support for the Low Income Investment Fund organization because the company is engaged in many illegal race discrimination practices that violate both Federal and State laws in California under the Title VII of the 1964 Civil Rights Act and various other state laws.

Your donor money should be used to support legitimate organizations that adhere to both Federal and state laws in the United States. The LIIF organization has failed to comply with these operating standards and *their financial support should be suspended, cancelled, and refunded gifts immediately by you and all of their donors*.

Sincerely,

Brian Rogers
Litigation Support

(Dkt. No. 72-1 at 21 (emphases added)).  Rogers later admitted that "he did not know" whether LIIF had refused to hire other black applicants (*see* Rogers Dep. Tr. 122, 125).  LIIF's counsel sent a cease-and-desist letter to him (Dkt. No. 72-1 at 24).

On August 2, 2024, Rogers moved to compel discovery (Dkt. No. 53).  Rogers acknowledged that he had not read all of defendants' responses about which he complained, and had not met and conferred respecting them before filing his discovery motion (Dkt. No. 59 at 2; Dkt. No. 61 at 1).  The Court nonetheless granted some of Rogers's discovery motions (Dkt. No. 59 at 1).  Rogers also acknowledged that he had not made himself available for his deposition (*see id.* at 2).  He was ordered to sit for one September 9, 2024 (Dkt. No. 59 at 2).

On September 4, 2024, five days before his scheduled deposition, Rogers sent opposing counsel an email offering to settle while stating that "your donors may continue to be contacted regarding this matter and puts your organization 'at risk' as a going concern" (Dkt. No 72-1 at 27).  LIIF's counsel explained to Rogers how to schedule a settlement conference and reasserted that he should not defame them to donors, but otherwise did not engage (*id.* at 31).

On September 6, 2024 at 11:35 a.m., Rogers filed the same settlement letter unsealed onto the public docket (Dkt. No. 60).  (Later that evening, an order issued providing LIIF a chance to seal its insurance policy that Rogers had included therein (Dkt. No. 61).)

United States District Court
Northern District of California

On September 6, 2024 at 11:43 a.m., or eight minutes after Rogers publicly docketed his settlement letter, Rogers emailed opposing counsel: "I will suspend any further activity to your donors at this time. But, I won't rule it out in the future depending on how you respond" (Dkt. No. 72-1 at 34).

On September 23, 2024, four days before the end of discovery, Rogers moved to extend discovery (Dkt. No. 64). He said that he had begun to seek defendants' depositions two weeks earlier, which was eight months into discovery; and, his attached communications showed that when given advance notice of multiple days when defendants were available, he provided on short notice only days he knew they were not available (*see* Dkt. No. 66). The Court found that "Rogers's failure to prosecute his claims [wa]s no reason to postpone proceedings to resolve his claims" (*id.* at 2). This was not Rogers's first such denial of a motion to extend a discovery cut-off deadline. *E.g.*, Order Denying Plaintiff's Motion for Extension of Discovery Cutoff, *Fed. Home Loan Bank of S.F.*, No. 19-cv-01978-SI, Dkt. No. 46 (N.D. Cal. Mar. 26, 2020) (Judge Susan Illston).

On September 25, 2024, after filing the motion above and just before it was decided, Rogers emailed defense counsel about his prior settlement offer. Recall that Rogers had last asked about its status on September 6, 2024, and that defense counsel had responded September 6, 2024, to state: "We are in receipt of your below email. I have forwarded it to my client. We may speak more after your deposition on Monday" (Dkt. No. 72-1 at 38–39). Now, on September 25, 2024, Rogers wrote:

> Ms Woodside and Ms. Lucas,
>
> What is the status of that First Settlement offer letter I sent to you on September 4, 2024 ?. I still did not receive a response after your September 9th deposition [of me]. A response in five days was requested.
>
> A failure to respond will cause me to contact your donors and supporters which could financially jeopardize your organization. In fact, the Department of Treasury is already looking into this matter through my contact with them. I will be sending your donors the official complaint filed with the Court to show your behavior and conduct.
>
> I really do not think YOUR donors and supporters want their

12

GRANT money they remit to you to litigate lawsuits. That would be a VIOLATION of your contractual obligations with them. In furtherance, I just may notify certain press release agencies such as BUSINESS WIRE or PR Newswire and publicize your conduct and behavior through the press which can be picked up by national and local media. I have accounts with press release agencies as well.

I hope you notified Philadelphia Insurance Company (your insurance carrier) about this lawsuit because they can refuse to pay if you failed to notify them properly if stipulated in your contract with them. Your settlement offer is around 13.4% of the Employment Practices (Part 2) liability value on the insurance policy. However, you can counter offer.

ASK yourself, Would or should anybody want to do business with someone that's engaged in racial discrimination conduct ? I would cut their funding off completely to remove my association with the violator.

Things will escalate. I promise.

Respond NO LATER THAN SEPTEMBER 30, 2024.

Good Day,

Brian R.

(Dkt. No. 72-1 at 38).

(And, stepping ahead in our narrative:  After briefing and oral argument on the sanctions motion discussed Rogers's extortionate conduct in the most serious terms, Rogers emailed LIIF employees with further threats.  On December 12, 2024, the sanctions motion was heard (Dkt. No. 79).  On December 18, 2024, a status conference was heard wherein defense counsel stated that a lawyer earlier representing LIIF had resigned her employment, and wherein the undersigned judge stated that an order would issue on pending motions by December 23, 2024 (Dkt. No. 86).  Trial remained scheduled for January 6, 2025.  On December 19, Rogers then emailed LIIF employees, including its CEO, but not its outside counsel (Dkt. No. 88 ¶¶ 4–5):

To All Defendants:

Well, [LIIF's outside attorney] was recently terminated from her employment at Littler Mendelsohn due to her level of incompetence. Now, LIIF has nobody worthy to represent you in court in two weeks.

Now is the time to try to develop a settlement in this case as you know the trial may begin as early as January 6, 2025 which is two

United States District Court
Northern District of California

weeks from now.

Your failure to respond to my prior settlement letters will now result in me contacting YOUR donors and grant providers again about your conduct which could impair your organization as a going concern. I'm also in contact with the Department of Treasury regarding your race discrimination attitude.

Please contact me regarding this matter before trial to discuss.

Brian R.

(Dkt. No. 88 Exh. 1).  LIIF's outside counsel filed the email onto the public docket in a declaration (*id.*), and sent a renewed cease-and-desist letter to Rogers (Dkt. No. 89 ¶ 2 & Exh. 1).  About four hours after the filing, Rogers replied to LIIF's outside counsel:

Dear Theodora,

These threatening letters will do you no good. You are wasting your time and the Court's time with these frivolous motions. In fact, they are quite laughable. The judge does not have the time to respond to your silly diatribe and ridiculous arguments.

My speech and communication is protected under the FIRST AMENDMENT TO THE CONSTITUTION. The Court can't do anything about my FIRST AMENDMENT rights. Let's wake-up ! Have you been to law school ? It appears that you have forgotten much and learned little of anything.

(Dkt. No. 89 Exh. 1 (unsigned in original)).)

### 3.  THE IMMEDIATE PROCEDURAL HISTORY.

In October 2024, LIIF and Baskin, Vasquez, Wetterholm, and Adina Zbringer (the last had scheduled the job interviews) moved for summary judgment (Dkt. No. 70 ("LIIF Br.")).  Rogers opposed (Dkt. No. 73 ("Opp."); Dkt. No. 74 ("Rogers Exhs.")).  Baptiste also moved for summary judgment (Dkt. No. 67 ("Baptiste Br.")).  Rogers did not oppose her motion (*see* Dkt. No. 75 ("Baptiste Reply")).  LIIF also moved for sanctions against Rogers (Dkt. No. 72 ("Sanctions Br.")).  Rogers at first failed to respond by the deadline (*see* Dkt. No. 77), then one week later filed two pages in response (Dkt. No. 78 ("Sanctions Opp.")).

This is the first substantive order in the case.  It follows full briefing and argument.

United States District Court
Northern District of California

**ANALYSIS**

This order first addresses the summary judgment motion, then the sanctions motion.

**1.    THE DISCRIMINATION CLAIMS ON BASES OTHER THAN RACE.**

Rogers concedes he never should have brought (Opp. 20) claims that he was discriminated against on the basis of sex or national origin (Amd. Compl. ¶¶ 65–71, 75–78). No evidence or argument supports them.  Summary judgment on all claims of discrimination on all bases other than race is, in favor of all defendants and against Rogers, **GRANTED.**

**2.    THE DISCRIMINATION CLAIMS ON THE BASIS OF RACE.**

Rogers also brought race-based discrimination claims against employees and an employer under Title VII of the Civil Rights Act of 1964 (Amd. Compl. ¶¶ 52–64) and Section 12940 of the California Fair Employment and Housing Act (*id.* ¶¶ 75–78).

>    ***A.    THE EMPLOYEE DEFENDANTS.***

Rogers concedes that he cannot bring claims against individual employees under these federal and state laws (*compare* LIIF Br. 11–12 (arguing), *and* Baptiste Br. 6–8 (same), *with* Opp. (failing to argue)).  *See Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1179 (9th Cir. 2003) (no Title VII right of action for claims brought against employees); *Reno v. Baird*, 957 P.2d 1333, 1334 (Cal. 1998) (same for Section 12940 discrimination actions), *abrogated by statute on other grounds*, Cal. Gov. Code § 12940(j)(3) (harassment); *accord Jones v. Lodge at Torrey Pines P'ship*, 177 P.3d 232, 235, 238–39, 243 (Cal. 2008).  Summary judgment on all federal and state claims of discrimination by the individual defendants are, against Rogers and in favor of the individual defendants (i.e., not LIIF), **GRANTED.**

>    ***B.    THE EMPLOYER DEFENDANT.***

Rogers brings disparate impact and disparate treatment theories of racial discrimination. This order focuses on the Title VII caselaw, as the state statute-based caselaw tracks the same standards.  *See Jumaane v. City of L.A.*, 241 Cal. App. 4th 1390, 1405 & n.1 (2015) (disparate impact); *Guz v. Betchel Nat'l, Inc.*, 8 P.3d 1089, 1113 (Cal. 2000) (treatment).

United States District Court
Northern District of California

### (i)    Disparate Impact?

"A disparate impact claim challenges 'employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.'"  *Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477, 1480 (9th Cir. 1987) (en banc) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 n.15 (1977)), *cert. denied*, 485 U.S. 989 (1988).

At trial, Rogers must first prove his prima facie case:  That (i) a specifically identified, facially neutral hiring practice (ii) caused (iii) a sufficiently significant disparate impact.  *Rose v. Wells Fargo*, 902 F.2d 1417, 1423–25 (9th Cir. 1990).  For this motion, after construing disputed facts in favor of Rogers, if defendants can show no reasonable jury could find one (or more) of the elements for which Rogers bears the burden, the claim fails.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).

Rogers's claim fails at the first step of his prima facie case (LIIF Br. 16; LIIF Reply 10–12):  Rogers does not challenge any specific, facially neutral hiring criteria or practice (*see* Opp.; Rogers Decl.).  In his opposition, Rogers cites the standard for disparate impact (Opp. 6–7).  And, he underscores what he asserts is the disparate impact:  That "every other racial group is represented in the San Francisco office's Accounting/Finance department except African Americans" (*id.* at 14).  But he furthermore identifies no specific, facially neutral practice that he challenges as even causing this impact (*see ibid.*).  To the contrary, he credits LIIF's facially neutral policies and challenges specific staff members' race-conscious actions violating them:

> A reasonable jury should also question whether Aaron Baskin and Paul Wetterholm followed the organizations non-discriminatory policies since they have never hired any African American people to work in their Accounting/Finance department in the San Francisco office while *other LIIF offices around the country have hired African Americans*[,] [a]nd since they are exclusively responsible for making hiring decisions.

(*id.* at 16 (emphasis added)).  In other words, his theory is that if LIIF had followed its policies, LIIF would have hired Rogers (and others like him).  The problem was not LIIF's neutrality, but its employees' "deliberate[]" if quiet racism (*id.* at 15):  "[B]oth Baskin and Wetterholm have excluded blacks from working in their accounting department solely based on their race"

16

(*id.* at 13).  (As it turns out, even this theory has limits:  Rogers does not produce evidence contesting sworn interrogatory responses that Baskin and Wetterholm *have* hired individuals who are black (*compare* Opp., *and* Rogers Decl.*, with* Dkt. No. 76-1, Baskin's Resp. to Interrogs. Set 1, No. 10, *and id.*, Wetterholm's Resp. to Interrogs. Set 1, No. 10).)

If Rogers meant to challenge LIIF's neutral practice of giving supervisors discretion, that practice or policy still lacks specificity.  *Cf. Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1224 (9th Cir. 2021).  Demonstrating that a hiring manager used subjective decisionmaking does not yet demonstrate an "*employer's* undisciplined system" or "system of discretion."  *Cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 355 (2011) (emphasis added and quotation omitted) (review of class certification).  Much less does it demonstrate a failure of any such system *causing* a disparate impact:  "[D]emonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's."  *Cf. ibid.*

And, by eve of trial, the purported disparate impact itself remained unsupported by specific and substantial evidence as to who could have applied, who did apply, and who was offered positions (*see* Opp. (not citing); Rogers Decl. & Exh. H (same, citing partial list of those ultimately employed in 2022 and 2024)).  In the usual case, a plaintiff presents a statistical comparison; in the closer cases, we consider "the adequacy of [that] data set" and its "statistical significance" alongside "qualitative component[s]" to decide whether a prima facie disparate impact has been identified.  *See Freyd*, 990 F.3d at 1225–26.  Here, the numbers of those ultimately employed are small (e.g., six accountants), and the numbers of those from whom they were selected is not offered.  There is no evidence for a comparative selection rate.  This is inadequate as a matter of law.  *See Freyd*, 990 F.3d at 1226.

In sum, no reasonable jury could make findings as to the disparate impact of a neutral practice not yet identified.  And, even contorting the assertions to cover a neutral policy of allowing supervisors to hold hiring discretion, that theory lacks evidentiary foundation here.

None of LIIF's other reasons for summary judgment (LIIF Br. 16–17) need be reached.

LIIF's motion for summary judgment on the claim of disparate impact by race is, in favor of LIIF and against Rogers, **GRANTED.**

### (ii)  Disparate Treatment?

To prove disparate treatment at trial, (i) Rogers must first prove a prima facie case of discrimination, (ii) LIIF must then produce a legitimate reason for its decision not to hire Rogers, and (iii) Rogers must finally produce specific and substantial evidence that the reason offered was unworthy of credence and indeed pretextual. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 659 (9th Cir. 2002) (last element).  If no reasonable jury could find one (or more) of the elements for which Rogers bears the burden, the claim fails. *Nissan Fire*, 210 F.3d at 1106.  Rogers's claim fails because no reasonable jury could find that LIIF's reason for its decision not to hire Rogers was in fact pretextual.

*As an initial point*, no reasonable jury could conclude that LIIF failed to produce a legitimate alternative reason for not hiring Rogers.  A reason suffices even if "foolish or trivial or even baseless," so long as it was "honestly believed" by the employer. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (quotation omitted).  LIIF proffers two main reasons for not hiring Rogers:  (1) Rogers had held two jobs of one-month duration; and, (2) Rogers lacked sufficient experience with grants accounting (LIIF Br. 15).

The first reason, work history, suffices:  LIIF points to testimony that Vasquez and Wetterholm told Baskin that Rogers's spotty work record was one reason not to hire him (Wetterholm Decl. ¶ 5; Baskin Decl. ¶ 6).  Both were staff who would work directly with the new hire (and Wetterholm outranked and supervised Baskin (Baskin Decl. ¶ 5), who had run the screener interview (*cf.* Opp. 11, 19)).  The interview addressed what Rogers's overlapping roles and his resume also made clear his string of short-term roles (*compare* Wetterholm Decl. ¶ 4, *with* Rogers Decl. ¶ 5; *see* Rogers Application 22–25).  Baptiste's email from the time conveyed to Rogers that his "work history" was one reason he was not hired (Emails 18).  And, the person ultimately hired for the role did not have any position listed on her resume of less than 18 months' duration (Singh Resume).

The second reason, grants accounting experience, independently suffices:  LIIF again points to testimony that Vasquez and Wetterholm told Baskin that Rogers's limited grants

18

accounting experience was a reason not to hire him (Wetterholm Decl. ¶¶ 5–6; Baskin Decl. ¶¶ 6, 11).  Baptiste's email reiterated it (Emails 18).  Recall that LIIF is in the business of deploying capital into low-income communities (*see* Job Posting 2).  The new hire was to "ha[ve] primary responsibility for accounting for State contracts, contributions, and grants" (*ibid.*).  "Grant accounting experience [was] highly desirable" (*id.* at 4).  A third of the bullet points for the "Billing" and "Finance" duties for the "Staff Accountant" position used the word "grant" or its variants (*ibid.*).  Rogers had done grant-related work only at City of Berkeley and only as part of that position (Rogers Application 22–23).  He represented that he had held that position alongside another, at Centium, for three years (*ibid.*); in fact, he had held the City of Berkeley role for just ten months, ending more than two years before he applied to LIIF (*see* Rogers Dep. Tr. 37).  Just two of the 47 bullet points Rogers submitted on his application used "grant" or its variants (Rogers Application 22–23).  By contrast, the ultimate hire had done grants accounting for over three years across her most recent two roles, which each had "Grants" in the job title and entailed managing up to $25 million in grants (Singh Resume).[6]

*Next*, no reasonable jury could conclude that either, let alone both, of the above alternative reasons were pretextual.  On the eve of trial, Rogers fails to point to any evidence suggesting otherwise, let alone "specific and substantial" evidence:

The work-history reason goes entirely unrebutted:  Rogers now recites the short-term roles but does not argue they were a pretextual basis for not hiring him (*e.g.*, Opp. 4–5 (quoting Rejection Letter)).  In his attached declaration, Rogers explains why he held those roles:  He filled in for other people (Rogers Decl. ¶ 5).  But he never challenges that he held those roles, that LIIF knew about them from his application, or that LIIF in fact chose not to hire him because of them (*see ibid.*).  He just argues that, in his view, his short-duration roles should not have been a reason not to hire (*see ibid.*).  That is not the legal test.  LIIF's concern about Rogers's multiple one-month roles may have been "foolish" (or not), but it was "honestly believed."  That ends the inquiry.

---

[6]  Rogers agrees the ultimate hire worked in accounting roles at least "from January 2019 to October 2022," which is over three years (Opp. 10 (misstating difference as "2.7 years")).

United States District Court
Northern District of California

United States District Court
Northern District of California

The grants accounting-based reason *is* challenged by Rogers, but not with specific and substantial evidence:  Rogers primarily makes ad hominin attacks against his interviewers, but these are irrelevant.  Rogers argues in his opposition briefing, for example, that Baskin was "sloppy," that Baskin's "Certificate of Advanced Accounting Proficiency" from Santa Clara University was "*not* an accounting degree," and that as a result Baskin was not qualified "for *ANY* accounting occupation" (Opp. 12).  But Baskin's qualifications are not at issue.  (Rogers also, it is undisputed, lacks an accounting degree.)  Rogers next makes ad hoc statements about how little grants accounting the role required and how little skill grants accounting requires in any case (*see, e.g.*, Rogers Decl. ¶ 6).  Rogers's statements about the role are undercut by the undisputed job posting itself (Job Posting 3–4).  LIIF's posting used the word "grant" and its variants ten times (*ibid.*).

Rogers does not mount specific and substantial evidence to show pretext.

As a result, LIIF's motions for summary judgment on the claims of disparate treatment by race is, in favor of LIIF and against Rogers, **GRANTED.**

### 3.    CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

A decision not to hire a person, even if improperly motivated, is not by itself outrageous conduct sufficient to state a claim for intentional infliction of emotional distress under California law.  *See Light v. Dep't of Parks & Recr.*, 14 Cal. App. 5th 75, 101 n.10 (2017).  Defendants point out there was no evidence of overt racial animus or outrageous conduct in the case, and no evidence of resulting emotional distress (LIIF Br. 18; Baptiste Br. 9).  Rogers does not rebut the argument or point to any evidence (*see* Opp.; Rogers Decl.; *see also* Baptiste Reply).  Summary judgment on the intentional infliction of emotional distress claims is, in favor of defendants and against plaintiff, **GRANTED.**

This means nothing is left of plaintiff's case.

1

**SANCTIONS**

As a result, the merits of this action have been decided against Rogers, as have the merits of every one of Rogers's previous discrimination actions brought and concluded in this district (*see* Dkt. No. 61 at 1–2). Now, LIIF moves for sanctions (Sanctions Br. 2).

Rogers is a perpetual claimant. Over ten years ago, a state court found Rogers vexatious. *Rogers v. Tipton Enters.*, No. 37-2012-0006620-CL-PO-EC, ROA No. 70 (Cal. Super. Ct. San Diego Cnty. Sept. 28, 2012) (Judge Joel R. Wohlfeil). Recently, after Rogers had not requested to file a new action in that county for more than five years, Rogers's repeated application for the order to be vacated was finally granted. *See id.*, No. 37-2012-0006620-CL-PO-EC, ROA No. 94 (Cal. Super. Ct. San Diego Cnty. May 19, 2023) (Judge Joel R. Wohlfeil).[7] Rogers by then had relocated to the Bay Area, *see id.*, and the record shows his litigation energies are now directed here.

Rogers has abused the right to come to court by pursuing an unmeritorious cause and by trying to extort a settlement by threat of defamation. The sanctions motion explains that such conduct could amount to criminal extortion, and plainly amounts to bad faith (Sanctions Br. 6). *See Flatley v. Mauro*, 139 P.3d 2, 19–21 (Cal. 2006). The motion also identifies attorney's fees that but for Rogers's improper conduct LIIF and its employees would not have incurred.

As examples of the conduct:

- When LIIF wrote asking for a time Rogers could sit for his deposition (Dkt. No. 55-1 Exh. 25), Rogers did not respond (Dkt. No. 55-1 Decl. ¶ 29). Instead, the next day, he emailed one of LIIF's donors to assert that on "numerous occasions" LIIF "has refused to hire African Americans" and that it should defund LIIF (*see* Dkt. No. 72-1 at 21). His sworn deposition

---

[7]  The form order does not provide a reasoned decision, but the five-year threshold for filings in the county may have been decisive: The application form notes the last year and the last five years of filings in the county as significant thresholds, and provides an opportunity for free response. Comparing the application granted in 2023 with the most recently rejected application in 2019, Rogers's free response arguments are similar, each stating the original order was mistakenly granted. *Compare* Application for Order to Vacate Prefiling Order, *Rogers v. Tipton Enters*, No. 37-2012-0006620-CL-PO-EC, ROA No. 93 (Cal. Super. Ct. San Diego Cnty. May 11, 2023), *with id.*, ROA No. 89 (Aug. 5, 2019). A search of records reveals what may have made a difference: Rogers's last request to file a new action in the county was made in 2017, *Petition of Rogers*, No. 37-2017-00022058-CU-PT-NC, ROA No. 1 (June 13, 2017). That was two years before the rejected application but six before the granted one.

revealed that he did not then have even one example of another black applicant having been rejected (*see* Rogers Dep. Tr. 122, 125). Defense counsel prepared a cease-and-desist letter (Dkt. No. 72-1 at 24);

- With three days to go before his Court-ordered deposition (Dkt. No. 59 at 2), Rogers publicly filed LIIF's insurance policy and his demand they settle his claims for an amount under its limits (Dkt. Nos. 60 & 69). Eight minutes later, he emailed LIIF's counsel to state that "I won't rule out [contacting donors again] in the future depending on how you respond" (Dkt. No. 72-1 at 34). Defense counsel responded (*id.* at 35).

- With two days to go before close of discovery, Rogers emailed defense counsel, asserting among other things that "a failure to respond will cause me to contact your donors and supporters which could financially jeopardize your organization," that "[i]n furtherance, I just may notify certain press release agencies such as BUSINESS WIRE," and that "Things will escalate. I promise" (Dkt. No. 72-1 at 38).

Notably, Rogers's emails and letters broadly alleged gross discrimination while attaching no documentation for those claims (*see, e.g.*, Dkt. No. 72-1 at 21). He later admitted that he lacked evidence, as one example, showing that LIIF "has refused to hire African Americans in its Finance and Operations Department on *numerous* occasions" (*ibid.* (emphasis added); *see* Rogers Dep. Tr. 122, 125). By contrast, Rogers's emails and letters specifically asserted what he did know: The "settlement offer is around 13.4% of the Employment Practices (Part 2) liability value on [your] insurance policy" (Dkt. No. 72-1 at 38). And, he attached documented evidence to one such letter: The insurance policy, which his diligence had dug up (*see* Dkt. Nos. 60 & 69).

To compensate for the time spent responding to these improper settlement offers as well as preparing the sanctions motion here, the motion tallies and seeks $5,830.00 in fees accrued by LIIF's attorneys (Sanctions Br. 7; Dkt. No. 72-1 ¶ 10).

In Rogers's two-page opposition, which he filed more than a week late, Rogers states: "Defendant has decided to waste the Court's time with this senseless, incompetent, and ridiculous motion" (Sanctions Opp. 2; *see* Dkt. No. 77 (re no timely response)). Rogers does not bother to rebut that he contacted donors in bad faith. Instead, he invokes a totally new fundamental right: free speech (*ibid.*). He fails to appreciate the limits to that right. *E.g.*,

*United States v. Hutson*, 843 F .2d 1232, 1235 (9th Cir. 1988) (re extortionate speech) (adopting *United States v. Quinn*, 514 F.2d 1250, 1268 (5th Cir. 1975), *cert. denied*, 424 U.S. 955 (1976)).  More to the point, he fails to remain focused on the conduct for which the motion seeks compensation.

The right to be free from discrimination is fundamental, and the right to petition preserves that right and is likewise fundamental.  And yet, for the same reasons, defending against aggressive accusations about such grave concerns is costly — for private defendants and the public's courts.  Those costs bring no benefit when claims are brought and litigated in bad faith or through conduct tantamount to bad faith.  Such costs are compensable.

A court may exercise its inherent power to impose sanctions for bad-faith conduct.  *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021).  Across this case, Rogers combined reckless disregard for the truth and worse, with frivolousness (claims he prosecuted for months by "mistake"), harassment (badgering, baiting, and belittling remarks in his pre-litigation emails, pleadings, and even summary judgment papers on points unrelated to the merits (*see* Opp.)), and improper purpose (diligence in getting a payout, not in much else).  *See id.*; *see also Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017).  The most egregious examples of his conduct were the threats to make false or reckless statements to third parties to imperil LIIF's finances if LIIF did not settle.  Just as Rogers was entitled to bring his claims in court, defendants were entitled to reject settlement and bring their defenses there, too.  Instead, turning the norms inside out, Rogers filed his settlement demands on the public record.  Not only is Brian Rogers a perpetual claimant, he is a holdup artist.

Indeed, an audacious holdup artist:  Our hearing on this motion addressed extortion directly, an existing hearing respecting the upcoming trial announced that an order on the still-pending motions would issue within five days, and still Rogers did as follows:

- With four days to go before an order on the motions was said to issue, Rogers emailed LIIF's CEO and employees, but not LIIF's litigation counsel, stating "LIIF has nobody worthy to represent you in court in two weeks.  Now is the time to try to develop a settlement in this case as you know the trial may begin as early as January 6, 2025 which is two weeks from now [*sic*].  Your failure to respond to my prior settlement

letters will now result in me contacting YOUR donors and grant providers again about your conduct which could impair your organization as a going concern" (Dkt. No. 88 ¶ 5 & Exh. 2). LIIF's litigation counsel docketed Rogers's email (*ibid.*), and responded to Rogers with a renewed cease-and-desist letter (*see* Dkt. No. 89 ¶ 2 & Exh. 1); and,

- With three days to go before an order on the motions was said to issue, Rogers responded to defense counsel: "You are wasting your time and the Court's time with these frivolous motions. In fact, they are quite laughable. The judge does not have the time to respond to your silly diatribe and ridiculous arguments. My speech and communication is protected under the FIRST AMENDMENT TO THE CONSTITUTION. The Court can't do anything about my FIRST AMENDMENT rights. Let's wake-up ! Have you been to law school ? It appears that you have forgotten much and learned little of anything (*see ibid.*).

This order finds that Rogers pressed his extortionate settlement demands in bad faith, rather than litigate his claims with diligence in court, and that but for this unreasonable conduct LIIF would not have needed reasonably to respond to those demands or to prepare the sanctions motion here, which resulted in $5,830 in extra attorney's fees.[8] Rogers now lacks the resources to compensate the movant, as he proceeds *in forma pauperis* (Dkt. No. 6).

Therefore, THE FOLLOWING SANCTIONS ARE ORDERED:

1. A LIEN ON SETTLEMENTS OR JUDGMENTS is imposed in the amount of $5,830.00 payable to the movant, Low Income Investment Fund, against any monies Rogers receives from any settlement(s) or judgment(s) of any claim(s) brought by Rogers in any court anywhere;

2. Low Income Investment Fund MAY FILE a "Notice of Lien on Settlements or Judgments" in any pending or future action brought by Rogers in any court, wherein it shall assert the lien imposed by Paragraph 1 and attach this order; and,

3. The Court shall retain jurisdiction to the extent necessary to enforce these sanctions. This means that the first $5,830.00 of any future settlements or judgments in favor of plaintiff

---

[8]  Plaintiff does not oppose time or rate (Sanctions Opp.). Each is modest, especially given time spent on plaintiff's renewed threats (*e.g.*, Dkt. Nos. 88–89) after having filed this motion (Dkt. No. 72). *E.g.*, *Peterson v. Sutter Med. Found.*, No. 3:21-CV-04908-WHO, 2023 WL 5181634, at *7–8 (N.D. Cal. Aug. 10, 2023) (Judge William H. Orrick) (rates north of $600 reasonable).

United States District Court
Northern District of California

will go to the movant (until $5,830.00 is paid).  To allow Rogers the opportunity to seek relief from our court of appeals, the sanctions are **STAYED UNTIL MARCH 28, 2025, AT NOON.**  They take effect immediately thereafter absent further order from this Court or its reviewing courts.

## CONCLUSION

To the extent above, the motions (Dkt. Nos. 67, 70, 72) are **GRANTED.**  The Court shall retain jurisdiction to the extent necessary to enforce the sanctions (as above) and to the extent necessary to further consider whether plaintiff is a vexatious litigant.

**IT IS SO ORDERED.**

Dated:  December 21, 2024.


WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE